GONZALO ALMODÓVAR, Plaintiff and Appellant, *v.* SECRETARY OF THE TREASURY OF PUERTO RICO, Defendant and Appellee.

No. 163. Decided June 22, 1962.

---

*Rafael D. Milán Padró, María Luisa Capó,* and *Yamil Galib Frangie* for appellant. *Hiram R. Cancio, Secretary of Justice, Arturo Estrella, Assistant Secretary of Justice,* and *Luis F. Candal* for the Secretary of the Treasury.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Dávila.

PER CURIAM.

We issued the corresponding writ to review the judgment rendered by the Superior Court, San Juan Part, dismissing two complaints in which deficiency notices for $570,200.82 and $256,622.34 were challenged and ordering the dismissal of the cases. For a better understanding of the fundamental question raised in connection with the furnishing of bond required by law as a jurisdictional requirement, it is necessary to review the main facts.

■ On September 7, 1950 the Secretary of the Treasury, pursuant to the provisions of § 57 (c) of the Income Tax Act of 1924, notified to the appellant Gonzalo Almodóvar a jeopardy assessment for the sum of $2,957,070.08 covering the taxable years 1941 to 1948. Several days later the taxpayer filed the claim in abatement provided by § 62 (a) accompanied by a bond for the sum of $123,913.34, which was the only bond which he could give according to his economic condition. This bond was approved by the Secretary on July 11, 1951 in order to give the appellant an opportunity to discuss administratively the scope of his tax liability. After an administrative hearing was held and a new notice given under § 57 (a), the deficiency for the years 1943 to 1948 was reduced to the sum of $1,844,444.12 after eliminating, among other things, the imputation of fraud of the original notice which entailed a penalty equal to 50 per cent of the deficiency. Another administrative hearing was again requested and held and as a result thereof a final notice was given on February 5, 1952 for the aforesaid years for the amount of $570,200.82. The judicial challenge of this action of the Secretary is the object of the complaint filed on March 3, 1952 before the former Tax Court under No. I–322, in which it was alleged that prior to the filing thereof the complainant "has filed with the defendant, and subject to his approval, a bond to answer to the defendant for the collection of any deficiency which might finally be determined."

In the meantime, and with respect to the years 1941 and 1942, the Secretary confirmed the original notice on April 7, 1953 and, on reconsideration, a final notice was given on June 4, 1953 pursuant to § 62 (b) for the total amount of $256,622.34. In the notice sent to him the taxpayer was required to furnish a bond in the sum of $267,000. A complaint challenging this action was filed on the following July 7 under No. I–379 of the former Tax Court. It was expressly alleged that the plaintiff, prior to the filing of the complaint,

had filed with the defendant, and subject to his approval, a bond to answer for the collection of the deficiency which might finally be determined.

In both cases the bond which the taxpayer claimed that he had furnished was the bond in the amount of $123,913.34 which he had accompanied with his claim in abatement under § 62(a), and he undoubtedly sought to avail himself of the provisions of § 2(A)(1) of Act No. 235 of May 10, 1949, 13 L.P.R.A. § 282, which in its pertinent part provides that "whenever a final decision of the Secretary of the Treasury denying a claim in abatement is appealed from, the taxpayer shall not be under obligation to give the bond required by this section, if the bond accompanying the claim in abatement guarantees, in the judgment of the Secretary of the Treasury, the tax assessed, to its payment in full." It is well to recall that the Act *supra*, which was in force on the date both complaints were filed, required, as a prerequisite of jurisdictional character, the furnishing of a bond "in favor of the latter and before him (the Secretary of the Treasury), subject to the approval of said official, for the amount of the tax notified, plus interest computed for a period of one (1) year at the rate of six per cent (6%) per annum."

Dismissal of both complaints was sought for failure of the complainant to furnish the bond required in the manner described and because the bond given had not been approved by the Secretary as insufficient. It was so held on February 18, 1953 in case I-322. Appeal was taken to this Court, and after the re-enactment of § 57 by Act No. 9 of October 8, 1954 (Sp. Sess. Laws, p. 122),[1] the judgment was reversed

---

[1] In general terms, Act No. 9 of October 8, 1954, *supra*, mitigated the inflexibility of the provisions cited in the test of this opinion which required, as jurisdictional requisite, the furnishing—invariably—of a bond for the total amount of the deficiency and one year's interest, and provided a procedure whereby a taxpayer who is unable to furnish the bond may request to be released from the filing of such bond or that the amount thereof be reduced, or the administrative determination rejecting any bond given by the taxpayer be reviewed.

by judgment of June 28, 1957, which in its dispositive part reads as follows:

"The judgment rendered on February 18, 1953 by the Superior Court, San Juan Part, dismissing the proceedings for lack of jurisdiction and ordering the dismissal of the complaint, is reversed and the case is remanded to the trial court with instructions, after holding a hearing and hearing the parties, to enter an order 'upholding the amount of the bond required by the Secretary of the Treasury, or reducing the same, or exonerating the taxpayer from giving a bond, or approving the bond rejected by the Secretary, or ordering the taxpayer to furnish another bond,' pursuant to the procedures for such purposes provided by § 57 of the Act *supra,* as re-enacted in 1954."

In compliance with our order, and pursuant to the existing provisions for furnishing bonds during the judicial procedure, the trial court held a hearing and after considering the taxpayer's economic condition, on November 12, 1958 it ordered him to give *a new bond* for the sum of $150,000 and determined specifically the manner in which it should be set up. Thus, it ordered the taxpayer to constitute a mortgage on all his real properties which had been mentioned at the hearing, another mortgage on the chattels which he had in his business shops for the manufacture of handkerchiefs and dry-goods establishments, with the exception of the stock in hand of the latter, and to cede to the Secretary a mortgage credit on real property which had been constituted in his favor. It determined that the apportionment of liability would be made in the corresponding documents "in agreement with the Secretary of the Treasury." In view of plaintiff's petition for return of the bond papers which accompanied the claim in abatement, the parties agreed *"to leave in force the same bond which he had furnished* . . . but on condition that the plaintiff *increase* the bond up to the amount of $150,000." Summing up, the appellant was required in the entire incident to increase the guarantee by an additional

sum of $26,086.66, inasmuch as the original bond was for $123,913.34.

On March 18, 1959 the taxpayer filed with the clerk of the court a motion entitled deposit of bond to which he attached several documents in compliance with the order of November 12. It was stated that "the plaintiff having exhibited those documents to the defendant and invited him to sign the stipulation on deposit of bond . . . . the defendant refused through his legal representative to sign the stipulation." In a writing filed by the Secretary it is explained that the refusal of his attorneys to sign the stipulation in question was due to the fact that in their opinion the bond papers should be filed with the Secretary of the Treasury and not with the clerk of the court.

When hardly two days had elapsed after the expiration of the final period granted to the taxpayer to furnish the bond, the Secretary moved for dismissal of the complaints on the ground that the plaintiff had failed to comply with the order enlarging the bond. He alleged that this noncompliance arose from the failure to submit the bond to the Secretary, and invoked also § 57 (a) 6 which provides that when the court determines that the taxpayer must file a bond, "such bond shall be submitted to the Secretary for his approval within a reasonable period fixed by the Court . . . which period shall never exceed 60 days from the date the resolution of the Court fixing said bond becomes final and executory."

On May 1, 1959 the trial court dismissed the motion for deposit of bond made by the plaintiff and granted the motion for dismissal of the complaints and ordered their dismissal, and to that end it entered what it labelled "resolution," which in its pertinent part reads as follows:

"We believe that by provision of law the bond in every case must be furnished in favor of the Secretary of the Treasury and before him, and that it can not be submitted, as was

done in this case, to the court, particularly since no notice was timely given to the defendant of the motion for deposit of bond nor of the documents attached thereto."

On the following June 4, 27 days after filing in the record proof of the notice given to the parties of the "resolution" of May 1, the taxpayer filed a petition for review before this Court. We issued the writ.

 In construing the provisions requiring bond, as a jurisdictional requirement, contained in § 2(A) (1) of Act No. 235 of 1949, *supra*, in *Gómez v. Tax Court*, 73 P.R.R. 431 (1952), we said that the furnishing of bond in favor of the Treasurer and *before him*, subject to his approval, is a requirement that must be strictly complied with because it is a condition imposed by the sovereign in order to be sued. However, in the instant case the original bond was furnished before the Secretary and approved by him for the purposes of prosecuting the claim in abatement. The only requirement made subsequent thereto was an *increase* of the bond already given, in the manner specifically provided by the court.[2] We fail to see how the requirement that the bond be furnished before the Secretary can be extended to this increase for the sum of $26,086.66, since such action would defeat the taxpayer's right to challenge deficiencies for almost three quarters of a million dollars. The purpose of requiring that the bond be furnished before the Secretary is to give that officer an opportunity to examine it and pass

---

[2] As a question of fact, the properties offered to secure the mortgage bond are the same, except that they answer for different amounts. In the original bond the real properties answered for $54,350, while now they answer for $88,000; the personal properties were in 1950 to answer for $25,420; in 1959 for $19,020. Both bonds included the assignment of a mortgage credit for $44,143.34.

upon its sufficiency.[3] However, in this specific case the question of sufficiency had been determined by the court itself which had even determined in advance the manner in which the guarantee for $150,000 should be furnished, which was the maximum which the taxpayer could offer within his economic circumstances. The question had gone beyond the administrative sphere and entered the judicial ambit. This being so, the trial court erred in dismissing the complaints.

The judgment rendered by the Superior Court, San Juan Part, on May 1, 1959, will be reversed and the case remanded for further proceedings consistent with this opinion.

---

[3] It is significant that in the original bond the taxpayer sets forth that "having filed on September 21, 1950 a claim to abate the deficiency under § 62(a) of the existing Income Tax Act, we were required by the Treasurer of Puerto Rico to give a mortgage bond for the sum of ONE HUNDRED TWENTY-THREE THOUSAND NINE HUNDRED THIRTEEN DOLLARS AND THIRTY-FOUR CENTS ($123,913.34), which is the total value of our personal and real properties susceptible of being encumbered by mortgage to answer for the payment of that portion of the deficiency which would not be abated, as well as of the interest and penalties thereon, as provided by the said Act." As stated above, the Secretary approved this bond on July 11, 1951. We must therefore presume that he estimated that it was *sufficient* to answer for the sum secured.